1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  CANDACE CASIDA and LIZETTE ) Case No.: 1:11-cv-01052 AWI JLT
    GALVAN,                      )
12              Plaintiffs,      ) FINDINGS AND RECOMMENDATIONS
                                 ) DENYING PLAINTIFFS' MOTION FOR CLASS
13        v.                     ) CERTIFICATION
                                 )
14  SEARS HOLDINGS CORPORATION, et al., ) (Doc. 99)
                                 )
15              Defendants.      )
                                 )
16  _____ )

17        Plaintiffs Candace Casida and Lizette Galvan ("Plaintiffs") seek class certification pursuant to

18  Rule 23 of the Federal Rules of Civil Procedure in its suit against Defendant Sears Holdings

19  Corporation, Sears, Roebuck & Co. ("Defendants").  (Docs. 131, 128).  Plaintiffs are former Assistant

20  Managers of Sears who were employed in Sears' full-line retail stores.  (Doc. 131 at 6).  Plaintiffs

21  contend that Sears misclassified its Assistant Managers as exempt employees, thereby depriving them

22  of overtime.  (Doc. 131).  Plaintiffs seek to represent a class of former and current Assistant Managers

23  for Sears. (Doc. 131 at 19).  For their part, Defendants dispute that Plaintiffs have demonstrated the

24  Fed. R. Civ. 23 requirements but focus their attack on their claim that individual questions

25  predominate such that a class action is not the superior method of adjudicating Plaintiffs' claims.

26        The Court has read and considered the pleadings and supporting documents, and heard oral

27  arguments by counsel on August 3, 2012.  For the reasons set forth below, the Court recommends

28  Plaintiffs' motion for class certification be **DENIED**.

1

## I.     PROCEDURAL HISTORY

Plaintiff Casida filed her initial Complaint in the Northern District of Illinois on March 28, 2011. (Doc. 1).  Plaintiff filed the Complaint as a collective and class action in which she alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and the California Labor Code. Id. After Plaintiff revised her Complaint and Sears answered, the Illinois Court ordered Plaintiff's California claims transferred to the Eastern District of California. (Doc. 59).

Plaintiff filed a Second Amended Complaint ("SAC") in this Court on December 5, 2011. (Doc. 77).  The SAC removed Plaintiff's FLSA claim and added a claim for civil penalties under the California Private Attorney General Act ("PAGA"), Labor Code Section 2698, et. seq.   After Defendants answered, Plaintiffs filed notice that Plaintiff Casida's case was related to a case filed by Plaintiff Galvan in the San Diego County Superior Court, then removed to the United States District Court for the Southern District of California.  (Doc. 95).  The notice explained that the matters were related as follows:

> [B]oth cases are brought against Sears, seek recovery on behalf of a similar class and involve similar allegations and factual issues. Both cases seek to represent a class of persons who are or were employed by Sears in Assistant Store Managers positions in California, and assert that Plaintiff and putative class members were misclassified as exempt employees under California law, and assert that Sears misclassified employees in Assistant Store Manager positions as exempt from overtime, failed to timely pay all compensation owed at termination, and failed to provide itemized wage statements.

(Doc. 95).  Plaintiff Galvan's case was later transferred from the Southern District Court to this Court. (Doc. 109).

Plaintiffs filed a motion for class certification on May 11, 2012.  (Doc. 99).  On June 6, 2012, Defendants filed a motion to dismiss the Galvan case, or in the alternative, to consolidate it with the Casida case.  (Doc. 107).  Before the motion was heard, the parties stipulated to consolidate the cases. (Doc. 109).  On June 28, 2012, the Court ordered the cases consolidated.

Plaintiffs filed their consolidated class action complaint on June 29, 2012.  (Doc. 130).  Aside from references to Plaintiff "Galvan," the consolidated complaint is identical to Casida's second amended complaint.  (Doc. 130).  Defendants filed their Answer on July 18, 2012.

In support of the motion for class certification, Plaintiffs submitted 12 declarations of proposed class members.  (Docs. 101, 103).  On June 22, 2012, Defendants filed their Opposition to the motion

1  (Docs. 110-114), to which Plaintiffs filed a reply on July 20, 2012 (Docs. 135-139).   Defendants

2  submitted 48 declarations of its employees and/or experts, in support of its Opposition.  (Doc. 113).

## II.    REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of a California Division of Labor Standards Enforcement's ("DLSE") July 6, 1993 Opinion Letter.  (Doc. 112).

A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.  The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d).  (See Gonzalez v. Millard Mall Services, Inc. (S.D. Cal. 2012) 281 F.R.D. 455, 459  (citing Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir.1953). Since the parties have not disputed the taking of judicial notice of these documents, and the documents are subject to judicial notice, the Court GRANTS Defendants' and Plaintiffs' requests for judicial notice.

## III.    EVIDENTIARY OBJECTIONS

Plaintiffs and Defendants object to evidence submitted by their opponents.  (Doc. 111; Doc. 138). Defendants request also the Court strike the evidence to which they have objected.  (Doc. 111). However, in conjunction with a Rule 23 class certification motion, the Court may consider all material evidence submitted by the parties to determine Rule 23 requirements are satisfied.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  Accordingly, declarations may be used to support or oppose a motion where presented in writing, subscribed as true under penalty of perjury, and dated. 28 U.S.C. § 1746.   "On a motion for class certification, the court may consider evidence that may not be admissible at trial."  Mazza v. Am. Honda Motor Co., 254 F.R.D. 610 (C.D. Cal. 2008) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (describing a court's determination of class certification as based on "tentative findings, made in the absence of established safeguards" and describing a class certification as "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials"); see also Keilholtz v. Lennox Hearth Prods., 268 F.R.D. 330, 337 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may

3

1    not be admissible at trial"); <u>Williams v. Veolia Transp. Servs.</u>, 2009 U.S. Dist. LEXIS 123600 at *7

2    (C.D. Cal. Mar. 20, 2009) ("Unlike evidence presented in a summary judgment motion, evidence

3    presented at the class certification stage need not be admissible at trial.").  Regardless, the Court has

4    considered only the evidence deemed admissible in its analysis.[1,2]

5         A.        DEFENDANTS' OBJECTIONS TO PLAINTIFFS' EVIDENCE

6              Defendants assert the following "common objections" to Plaintiffs' declarations of proposed

7    class members and to the declaration of Candace Casida: 1) lack of foundation/speculation; 2) vague

8    and ambiguous; 3) relevance; and 4) "best evidence."   Defendants' objections cite to an entire

9    paragraph (Doc. 111 at 6-11) or quote multiple sentences of a paragraph (highlighting the

10   objectionable sentence(s) in bold type) and then list two to three objections to the highlighted portions.

11   (Doc. 111 at 13-19, 25, 27, 29-30, 32).  For example, one column in Defendants' table quotes seven

12   sentences from the Baldwin declaration, highlights three of those sentences as objectionable, and lists

13   three objections in the adjacent column without any indication about which objections apply to which

14   highlighted sentences.  (Doc. 111 at 13).  In doing so, Defendants expect the Court to speculate about

15   which of the listed objections correspond to each of the highlighted sentences.  "It is not the Court's

16   role to divine Defendant's arguments."  <u>Dukes v. Wal-Mart, Inc.</u> (N.D. Cal. 2004) 222 F.R.D. 189,

17   198-99 (summarily denying defendants' objections as unduly vague and denying defendants' motion

18   to strike where defendants highlighted multiple portions of each declaration without specifying which

19   objection applied to which statement and where it was not obvious why many objections had been

20   asserted).

21              Defendants incorrectly assume that the Court is required to sift through the multiple sentences

22   and determine which objections Defendants might have intended to apply to which sentence.  (Doc.

23   111 at 13-19, 25, 27, 29-30, 32).  Even where Defendants only list a single sentence, it is unclear to

---

[1]  To the extent that the evidentiary material submitted by either party is speculative or represents a legal conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch v. Regents of the University of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered . . . Objections on any of these grounds are simply superfluous in this context." (citation omitted, emphasis in original).
[2]  Due to the volume of evidence submitted by the parties, the Court declines to identify every declaration relied upon but rather, cites representative samples.  However, the Court has read and considered each of the admissible declarations provided in support of and in opposition to the motion for class certification.

4

which phrase or portion of the sentence they object or why.  Because Defendants failed to specify which objections correspond with which objectionable portion(s) of the sentence(s), Defendants have waived the objections to Plaintiffs' evidence that were presented in the manner described above.  Even if the Court excluded some portion of the declarations submitted by Plaintiffs, the Court is satisfied it would have no bearing on the outcome of Plaintiffs' motion for class certification.  Dukes, 222 F.R.D. at 198-99.   Accordingly, Defendants' common objections to Plaintiffs' proposed class member declarations on the grounds that they lack of foundation, call for speculation, are vague and ambiguous, irrelevant, or in violation of F.R.E. 1002 (best evidence) summarily denied and any corresponding motion to strike is denied.

### i.       Gonzalez Declaration

Defendants seek to strike the declaration of Norma Gonzalez because she failed to appear for her noticed deposition on June 5, 2012.  (Doc. 111 at 12).  The Court reporter's Declaration re Failure of Norma Gonzalez to appear for her deposition indicates that counsel for Plaintiffs agreed to accept service of the deposition subpoena on Ms. Gonzalez' behalf, that service was accomplished, but Ms. Gonzalez failed to appear.  (Doc. 114-16 at 3-4).  Plaintiffs acknowledge that Ms. Gonzalez failed to appear, but assert her declaration should not be stricken because it was signed under penalty of perjury and her non-appearance does not affect the facts set forth in her declaration.  (Doc. 139 at 44-45). "Striking a witness' direct testimony is an 'extreme sanction,' one that should only be employed by a court after a party has demonstrated that [it] has taken adequate steps to protect [its] own rights." United States v. Seifert, 648 F.2d 557, 561 (9th Cir.1980) (denying request to strike testimony where moving party did not bring a motion to compel after declarant failed to appear for deposition).

Here, Defendants did not take steps to protect their position after Gonzalez failed to appear for her June deposition. Rather than bring a motion to compel, Defendants chose instead to raise the issue at this juncture.  "It is not the province of this Court to ensure that parties protect their own rights." (See S.E.C. v. Private Equity Management Group, Inc. (C.D. Cal., July 2, 2009) 2009 WL 2019788 order clarified, (C.D. Cal., Aug. 10, 2009) 2009 WL 2488044 and modified sub nom. SEC v. Private Equity Management Group, LLC (C.D. Cal., May 7, 2010) 2010 WL 1929869.  Defendants should have taken adequate steps to protect their rights by seeking the Court's assistance and intervention and

their failure to do so now precludes them from excluding Ms. Gonzalez' declaration.  (Id.)  Thus, the motion is **DENIED**.

### ii.      Contradicting Testimony

Defendants assert nearly 100 objections to portions of each of the declarations submitted by Plaintiffs on the basis that the cited statements contradict the declarants' deposition testimony.  (Doc. 111 at 11-12, 16-35) (citing Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* 475 U.S. 1048 (1986) and Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir.1975)).  The cases cited by Defendant set forth the general rule in the Ninth Circuit that a party cannot create an issue of fact by an affidavit contradicting his *prior* deposition testimony.  *(See also* Kennedy v. Allied Mut. Ins. Co. (9th Cir. 1991) 952 F.2d 262, 266 (emphasis added).  The concern in those cases was that a plaintiff who had been thoroughly deposed could later sign a declaration contrary to his/her testimony in order to create a material fact and avoid summary judgment.

Here, Defendants took each of the depositions *after* the declarations had already been signed.[3] Thus, the situation is reversed: the deposition testimony allegedly contradicts prior declarations. Defendants have not cited any binding authority for the proposition that declarations must be stricken when contradicted—in whole or in part—by later depositions, and the Court has located none. Contradictions in the testimony affect the weight given to the evidence, rather than its admissibility, and at the class certification stage the Court is unable to weigh the evidence. *See* Marlo v. UPS, Inc., 639 F.3d 942, 949 (9th Cir.2011) (characterizing the district court's statement that it "could not 'weigh

---

[3] The declarations of Castaneda and Galvan are not dated; as a result, the Court cannot find that the declarations were created to establish a material fact.  Additionally, Defendants have not raised any objection to the declarations on that basis.  Baldwin's declaration was signed on May 8, 2012, but his deposition did not occur until May 31, 2012. (Docs. 103-1 at 4 and 114-3 at 2).  Casida's deposition occurred on May 18, 2012, but her declaration was previously signed on May 5, 2012.  (Doc. 101 at 5 and 114-4 at 2).  Cobb's signed his declaration on May 8, 2012, almost a month before his June 1, 2012 deposition. (Doc. 103-1 at 13 and 114-10 at 2).  Gillespie's declaration was signed on May 7, 2012 and her deposition did not occur until May 31, 2012.  (Doc. 103-1 at 22 and Doc. 114-15 at 2).  Hendrix's deposition occurred on June 7, 2012, but his declaration was signed a month earlier on May 3, 2012.  (Doc. 103-1 at 30 and Doc. 114-16 at 9).  Mardirossian's deposition occurred on June 5, 2012, but the declaration had already been signed by May 8, 2012.  (Doc. 103-1 at 34 and Doc. 114-17 at 61).  Oliva's deposition occurred on June 6, 2012, but his declaration had been signed on May 7, 2012.  (Doc. 103-1 at 38 and 114-18 at 2).  Patrick's declaration was signed on May 8, 2012 and her deposition did not occur until May 31, 2012. (Doc. 103-1 at 42 and 114-19 at 2).  Watson signed her declaration on May 8, 2012 and he was not deposed until June 4, 2012. (Doc. 103-1 at 46 and 114-21 at 2).

the evidence' when evaluating the requirements of Rule 23" as "a correct statement of law"). Consequently, Defendant's objections on the basis of contradictions in testimony are overruled.

### B.        PLAINTIFFS' OBJECTIONS TO DEFENDANTS' EVIDENCE

#### i.   Manager declarations

Plaintiffs object generically to the declarations of Sears' managers on the grounds that they lack foundation, personal knowledge, are based on hearsay and are irrelevant.  (Doc. 138 at 3-4). With the exception of five citations to specific testimony, Plaintiffs list the names of all declarants to whom they intend their objections to apply.  (See Doc. 138 at 3 and fn. 1).  As the Court explained above, Plaintiffs' failure to identify a specific objection waives such objections.

With regard to the specific objections cited by Plaintiffs, the Court finds as follows:

1)  <u>Declarations of Funai  and King</u> (Doc. 113-4 at 56, ¶4 and Doc. 113-5 at 41, ¶4)

Plaintiffs object to each of these declarations on the basis that Funai admits she did not directly supervise Baldwin and King admits that she did not directly supervise Gillespie.  (Doc. 138 at 3). Defendants assert that the declarations of Funai and King are sufficient because they merely testify to whether the experiences set forth in the declarations of Baldwin or Gillespie, reflect the experiences of other ASMs in the managers' respective stores.  Because declarants Funai and King are only testifying as to what they perceive to occur in their stores, they need not personally know declarants Baldwin or Gillespie to establish foundation for their testimony.  As such, Plaintiffs objections are overruled.

a.   <u>Declarations of Lawson , Adams, and Cooper</u> (Doc. 113-5 at 56, ¶7, 5 and Doc. 113-2 and Doc. 113).

Plaintiffs object to the declarations of Lawson and Adams because the managers testify about how the ASM spent his/her time, but either do not indicate how often they observed the ASM or only indicate that they spent a limited amount of time in the store.  Plaintiffs object to Cooper's declaration because he characterizes the ASM as weak, but states he relied on the ASM's hiring/firing recommendations.  The Court finds that each of these objections goes to the weight of the evidence and not the admissibility of the statements and on this basis, overrules Plaintiffs' objections.

#### ii.   Crandall Report

Plaintiffs ask the Court to "reject" the declaration of Robert Crandall ("Crandall") for two

7

primary reasons: 1) there is no evidence that the sample used in Crandall's report is representative of the current class of California ASMs and 2) the report lacks foundation because Crandall does not explain how he determined certain tasks to be "managerial" versus "non-managerial." (Doc. 138 at 4-6). Defendants assert that Crandall's report need not be limited to California ASMs to be relevant and that any such variation would go to the weight of the evidence, not its admissibility. (Doc. at 141 at 6).

Plaintiffs' argument that the Crandall report needs to limit itself to California ASMs to be relevant flies in the face of their overall argument that Defendants' utilize numerous standardized corporate procedures to make the duties of an ASM similar in every store and every department within a store. The policies Plaintiffs rely upon to support their motion for class certification and the Rule 30(b) depositions cited by Plaintiffs demonstrate that Defendants' policies are established nationally and set expectations for Defendants' employees nationwide, not just in California. As a result, the Court will not exclude Crandall's report as irrelevant.

Additionally, Crandall's report sets forth his methodology, the controls used in the study and his conclusions (Doc. 113-3 at Exh. 11). Crandall explains that the observers utilized a task list of approximately 583 unique tasks that were pre-loaded on the work study software devices used to capture the data for the study. (Doc. 113-3 at 25-27). These tasks were then divided into 14 broad categories: computer/office work, associate related, merchandise related, monitor/travel, manager related, phone/walkie, customer related, cashiering, safety, security, other ASM tasks, interview/hiring, cleaning vendor related, and other. (Doc. 113-3 at 10). Crandall's report notes that many of the categories contained both managerial and non-managerial tasks. (Id.) From the data, Crandall sets forth the percentage of time the sample ASMs spent working on tasks in the various categories (as demonstrated through graphs at Doc. 113-3 at 51-68). Crandall also calculates the percentage of time the ASMs spent on managerial verses non-managerial tasks (as demonstrated in graphs at Doc. 113-3 at 44-49 and 69-74).

Plaintiffs have not provided expert testimony to call into question or undermine the reliability of Crandall's study. Because bare assertions of unreliability and bias are insufficient, there is no basis for this Court to call into question the Crandall's study as it relates to the methods used to gather the

data and the calculations demonstrating how the sample ASMs allocated their time among the 14 categories.  Akaosugi v. Benihana Nat. Corp. (N.D. Cal., Mar. 30, 2012) 2012 WL 1094425.

However, the Court finds that Crandall's failure to explain which tasks he characterized as "managerial" translates into a failure to explain his conclusions regarding the percentage of time spent on managerial versus non-managerial tasks.  The Court's gatekeeper function requires it to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993).  Thus, the Court will sustain the objection to the report.

### iii.    Happy Camper Declarations

Plaintiffs ask this Court to reject the declarations from Defendants' current employees because such declarations are inherently suspect.  (Doc. 138 at 6-7).  The Court notes that the ASM declarations submitted by Defendants are signed under penalty of perjury and each declarant admits awareness that the Plaintiffs are current and former employees of Sears and that the attorney assisting with the declaration represents Sears, and reports that the statement is made voluntarily.  Plaintiffs have not provided any evidence to the contrary.  The Court finds that this current factual situation is distinguishable from the cases cited by Plaintiffs.  In both Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank (N.D. Cal., Nov. 17, 2005) 2005 WL 4813532 and In re Wells Fargo Home Mortg. Overtime Pay Litigation (N.D. Cal., Oct. 18, 2007) 2007 WL 3045995 rev'd and remanded, (9th Cir. 2009) 571 F.3d 953, the declarations suggested that defendants improperly mislead the declarants about the purpose of the litigation.  There is no evidence in this case that such actions have occurred here.  As such, the Court will not exclude these declarations from its consideration of this matter and overrules the objection.

## IV.    LEGAL STANDARDS FOR CLASS CERTIFICATION

### A.    Rule 23(a)

Class certification is governed by the Federal Rules of Civil Procedure, which provide: "One or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  A class action is proper if:

1
2
(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

3

4   Fed. R. Civ. P. 23(a).   Generally, these prerequisites are referred to as numerosity, commonality,

5   typicality, and adequacy of representation, and "effectively limit the class claims to those fairly

6   encompassed by the named plaintiff's claims."   General Telephone Co. of the Southwest v. Falcon,

7   457 U.S. 147, 155-56 (1982) (citing General Telephone Co. v. EEOC, 446 U.S. 318, 330 (1980)).

8   When an action satisfies the prerequisites of Rule 23(a), the Court must consider whether the class is

9   maintainable under one or more of the three alternatives set forth in Rule 23(b).   Narouz v. Charter

10   Communs, LLC, 591 F.3d 1261, 1266 (9th Cir. 2010).

11         If an action meets the prerequisites of Rule 23(a), the party seeking class certification must

12   show the action is appropriate under Rule 23(b).   Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614

13   (1997).   Here, Plaintiffs seek class certification under Rule 23(b)(3).

14         **B.      Rule 23(b)**

15         Class certification under Rule 23(b)(3) is maintainable under Rule 23(b)(3) where "questions

16   of law or fact common to the members of the class predominate over any questions affecting only

17   individual members," and where "a class action is superior to other available methods for fair and

18   efficient adjudication of the controversy."   Fed. R. Civ. P. 23(b)(3). Where the issues of a case

19   "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3)

20   action would be inappropriate."   Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir.

21   2001).   Consequently, the Court must examine "whether the proposed classes are sufficiently cohesive

22   to warrant adjudication by representation."   Amchem Prods., 521 U.S. at 623.

23         **C.      Burden of Proof**

24              **1.   Rule 23**

25         Parties seeking class certification bear the burden of demonstrating that each element of Rule

26   23 is satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."   Wal-Mart Stores,

27   131 S. Ct. at 2551; Doninger v. Pacific Northwest Bell, Inc., 563 F.2d 1304, 1308 (9th Cir. 1977).

28   ///

10

## 2. Executive Exemption

Under California's Labor Code, all employees must receive overtime compensation may bring civil actions for the recovery of unpaid compensation. Cal. Lab.Code §§ 510, 1194. However, California law also provides an exemption from overtime pay for "executive" employees who meet six criteria. To qualify as executive-exempt, an employee must: (1) manage the enterprise, a customarily recognized department, or subdivision thereof; (2) direct the work of two or more other employees; (3) have the authority to hire or fire, or have their recommendations to hire, fire, or promote given weight; (4) exercise discretion and independent judgment; (5) be "primarily engaged" in exempt duties; and (6) earn a monthly salary equal to twice the state minimum wage for full-time employment. Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(a)-(f).

> The "primarily engaged" prong of the exemption inquiry requires a week-by-week analysis of how each employee spent his or her time. *Marlo II*, 2011 WL 1651234. The applicable regulations state that in determining whether an employee is "primarily engaged" in exempt work, "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work ... shall be considered." Cal.Code Regs. tit. 8, § 11090(1)(A)(1)(e). California courts have construed this requirement to mean that "the Court must determine whether any given class members (or all the class members) spend more than 51% of their time on managerial tasks in any given workweek." Dunbar v. Albertson's, Inc., 141 Cal.App.4th 1422, 47 Cal.Rptr.3d 83, 86 (Ct.App.2006) (emphasis added).

Cruz v. Dollar Tree Stores, Inc. (N.D. Cal., July 8, 2011) 2011 WL 268296 at *4; *see also* Marlo v. United Parcel Service, Inc. (9th Cir. 2011) 639 F.3d 942, 948 (finding that the district court correctly applied California law by requiring a week to week showing of the work actually performed.)

While California law requires the employer to bear the burden to demonstrate that an employee is exempt from the Labor Code's overtime requirements, a plaintiff attempting to maintain a class action by challenging the overtime exemption must have common evidence to support a legal theory of misclassification. Marlo v. United Parcel Service, Inc. (C.D. Cal. 2008) 251 F.R.D. 476, 481-82, aff'd, (9th Cir. 2011) 639 F.3d 942. A class action is appropriate if "plaintiffs are able to demonstrate … that misclassification was the rule rather than the exception...." Id.; *see also* Marlo, 639 F.3d at 947.

## D. Evidentiary Submissions

The Court must conduct a "rigorous analysis," which may require the Court "to probe behind

11

the pleadings before coming to rest on the certification question." <u>Wal-Mart Stores</u>, 131 S. Ct. at 2551 (quoting <u>Falcon</u>, 457 U.S. at 160-61). The Court has an affirmative duty to consider the merits of an action "to the extent that they overlap with class certification issues." <u>Ellis</u>, 675 F.3d at 981 ("a district court *must* consider the merits if they overlap with the Rule 23(a) requirements") (citing <u>Wal-Mart Stores</u>, 131 S. Ct. at 2551-52). As a result, the Court may consider material evidence to determine Rule 23 requirements are satisfied. <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975).

## V.   SUMMARY OF ARGUMENTS

Plaintiffs assert that they have set forth sufficient evidence to meet the requirements of Rule 23(a) and that class certification is appropriate under Rule 23(b)(3). (Doc. 131 at 18-28). Specifically, Plaintiffs contend that numerosity is satisfied because Sears has provided them with over 800 proposed class member identification numbers. (Doc. 131 at 20). Plaintiffs likewise believe they have met the commonality requirement through their general allegation that Sears misclassified all assistant managers in California as exempt and through the detailed common factual and legal questions set forth in their points and authorities. (Doc. 131 at 21-23). Plaintiffs further contend that the claims that they spent more than 50% of their time performing non-exempt test are typical of those suffered by the class. (Doc. 131 at 23). Additionally, Plaintiffs contend they fairly and adequately represent the interests of the class because they have no conflicts with the proposed class members and their counsel has significant experience handling class actions like Plaintiffs. (Doc. 131 at 23-24).

Defendants' Opposition contests Plaintiffs' ability to satisfy the class certification requirements under Rule 23(a)(2), 23(a)(3), 23(b)(3) and 23(c)(4). (Doc. 110 at 24-45). Specifically, Defendants assert that Plaintiffs' alleged common issues of fact and law are either irrelevant, do not properly support class certification, or are not dispositive of the overall exemption issue. (Doc. 110 at 26-29). Defendants also contend that Plaintiffs cannot establish commonality because the individualized analysis required by the executive exception demonstrates sufficient conflicting evidence to defeat commonality. (Doc. 110 at 29-34). Defendants further argue that Plaintiff Casida's claims are not typical of the claims of the other proposed class members because Casida failed to meet Defendants' employment expectations. (Doc. 110 at 39-41). Defendants assert that as a result, Plaintiff Casida will be vulnerable to unique defenses that would not be available against other proposed class

1  members who did meet Defendants' expectations.  (Doc. 110 at 39-41).  Defendants also argue that

2  Plaintiffs' motion should be denied outright, as they seek certification of a class that is different from

3  the class proposed in the operative pleading.  (Doc. 110 at 25).

4        Plaintiffs further seeks certification under Rule 23(b)(3).  (Doc. 131 at 24-29).  Plaintiffs allege

5  that despite the exemption analysis, common issues predominate where, as here, Defendants have

6  applied a uniform exemption policy to all assistant managers, have subjected such employees to

7  uniform policies which limit their discretion and shift non-exempt work to them, and where the

8  employees perform similar duties.  (Doc. 131 at 24-25).  Plaintiffs argue that class treatment of

9  misclassification cases is generally superior because it allows for a more cost-efficient and fair

10  litigation than resolving each class member's claim individually.  (Doc. 131 at 28).

11        With regard to Rule 23(b), Defendants dispute that common issues of fact or law would

12  predominate over the individual issues regarding how the proposed class members actually spent their

13  time.  (Doc. 110 at 35-39).  For similar reasons, Defendants argue that a class action is not superior to

14  other means of adjudication. (Doc. 110 at 41).

15        Alternatively, Plaintiffs argue that class certification is appropriate under Rule 23(c)(4).  (Doc.

16  131 at 29).  Defendants assert that Plaintiffs have not identified an issue that warrants certification

17  under Rule 23(c)(4).  (Doc. 110 at 44-45).

18  **VI.    DISCUSSION**

19      **A.    Proposed Class**

20        According to the evidence produced by the parties, there are approximately 79 full-retail stores

21  in California.  (Doc. 131 at 8 citing Doc. 126-10 at 4).  Each of those stores, regardless of size and

22  location contains at least one Softlines Assistant Manager (SL) who is responsible for clothing,

23  jewelry, footwear, and home furnishings.  In other areas of the store, the specific title given the

24  assistant manager varies depending on the size and/or type of the store.  (Doc. 126-4 at 18).  For

25  example, a Brand Central ("BC") Assistant Manager is generally responsible for electronics and home

26  appliances.  However, if the store's volume is large enough, the responsibilities for home appliances

27  may be assigned to a Home Improvement Assistant Manager ("HI").  For very small stores,

28  Defendants utilize a Hardlines Assistant Manager ("HL") who undertakes all the duties of a BC ASM

1    and an HI ASM.  (Doc. 126-4 at 55).

2         Plaintiffs move to certify the following class:

3         All current and former merchandising Sears' Assistant Store Managers, including those
         who held the positions of Hardlines, Softlines, Brand Central, and Home Improvement
4         Assistant Store Managers, employed in Sears' full-line retail stores in the state of
         California since March 28, 2007, through the present.

5

6    (Doc. 131 at 19).

7         Defendants argue that the Court should dismiss Plaintiffs' entire motion, as Plaintiffs

8    impermissibly seeks to certify a class different from that set forth in their complaints.  (Doc. 1 at 5,

9    Doc. 77 at 5, Doc. 130 at 6, Doc. 131 at 19, Doc. 131 at fn.1).  The Third Amended Complaint

10   describes the class Plaintiffs seek to certify as, "[a]ll current and former Assistant Managers employed

11   by Sears in Sears' full-line retail stores in the State of California since March 28, 2007."  Plaintiffs

12   note they no longer wish to exclude Operations Assistant Managers and Loss Prevention Assistant

13   Managers in the proposed class under consideration. (Doc. 131 at fn 1; Doc. 131 at 19).

14        Defendants argue that Plaintiffs are bound to the class definition in their pleadings and absent

15   an order granting leave to amend, the Court should not consider the class now proposed by Plaintiffs.

16   (Doc. 110 at 25).  Defendants cite Ortiz v. McNeil-PPC, Inc. (S.D. Cal., May 8, 2009) 2009 WL

17   1322962  at *2 and Berlowitz v. Nob Hill Masonic Management (N.D. Cal., Dec. 6, 1996) 1996 WL

18   724776 at *2 to support their argument.  The Court finds that neither of these cases provide a basis to

19   deny Plaintiffs' motion.  Ortiz is clearly distinguishable, as it involved a motion to amend the class

20   action complaint after the court had denied plaintiffs' motion for class certification.  (Ortiz, 2009 WL

21   1322962  at *2-3.  Though Berlowitz involved a motion to certify a class, the plaintiff there sought to

22   certify an expanded class than that set forth in the pleadings.  (Berlowitz, 1996 WL 724776 at *2)

23   (stating "the court will not consider certification of the class *beyond* the definition provided in the

24   complaint . . . .") (emphasis added).

25        Plaintiffs cite In re TFT-LCD (Flat Panel) Antitrust Litigation (N.D. Cal. 2010) 267 F.R.D.

26   583, 591 amended in part, (N.D. Cal., July 28, 2011) 2011 WL 3268649, to demonstrate that a class

27   maybe modified without an order to amend, where modifications to the class are minor, require no

28   additional discovery, and cause no prejudice to defendants.   Given that Plaintiffs seek to narrow the

14

class originally proposed and Defendants do not articulate any particular prejudice that arises from the newly narrowed class or any additional discovery that would be required, the Court will consider the proposed class as set forth in this motion.

**B.      Rule 23(a) Requirements**

1.    Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  EEOC, 446 U.S. at 330.

Plaintiffs contend their claims meet the numerosity requirement because "Sears has employed hundreds of class members in its full-line retail stores in California."  (Doc. 131 at 20 (citing Doc. 126 at 6).  Specifically, Plaintiffs state that on or about February 10, 2012, Defendants provided Plaintiffs with a list of proposed class members that contained over 800 employee ID numbers.  (Doc. 126 at 6).  Defendants do not dispute the numerosity element.  Given the number of prospective class members, the Court concludes that Plaintiffs have satisfied the numerosity requirement.

2.    Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement has been construed permissively; not all questions of law and fact need to be common.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "However, it is insufficient to merely allege any common question."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).  Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

Plaintiffs assert that the overriding questions of whether Sears properly classified ASMs under its blanket exemption policy and whether the duties performed by Assistant Managers constitute exempt work, are sufficient to satisfy commonality.  (Doc. 131 at 22).  Toward this end, Plaintiffs identify the following common questions which they contend will "drive the ligation":

1)      Did Sears properly classify its Assistant Managers as exempt employees?

15

> 2)   Did Sears' settlement of repeated lawsuits over this issue trigger an obligation to affirmatively or individually analyze the exemption status of Assistant Managers?
>
> 3)   Which tasks performed by Assistant Managers constitute exempt and non-exempt work?
>
> 4)   Did Sears [sic] labor budgeting policies and practices result in Assistant Managers performing non-exempt work that hourly employees should have done had Sears allocated sufficient hours to them to complete the work?
>
> 5)   Does Sears maintain a uniform policy and practice of setting and restricting labor budgets for hourly staff?
>
> 6)   Did Sears [sic] Assistant Managers primarily perform exempt work?[4]
>
> 7)   Did Sears [sic] job aids, tools, and procedures circumscribe the decision making ability of Assistant Managers?
>
> 8)   Was Sears required to (and did it) compensate Assistant Managers at twice the California minimum wage rate for all hours worked over 40 hours per week?
>
> 9)   Did Sears' misclassification of employees as exempt constitute an unlawful and/or unfair business practice under the California Business and Professions Code sections 17200, et seq.?

(Doc. 99-1 at 21-22).

Plaintiffs note that similar questions satisfied the commonality requirement in <u>Greko v. Diesel U.S.A., Inc.</u>, 277 F.R.D. 419, 425 (N.D. Cal. Oct. 26, 2011); <u>Alba v. Papa Johns, Inc.</u>, 2007 WL 953849, at *6, <u>Tierno v. Rite Aid Corp.</u>, 2006 WL 2535056 at *2 (N.D. Cal. Aug. 31, 2006) and that Defendants previously stipulated to class settlement regarding similar legal and factual issues in Sears Roebuck and Co. v. Lisa Fitts, et al., 8:05-cv-00238-CJC-RNB, (Cal. C.D.).[5]   In <u>Greko</u>, <u>Alba</u> and <u>Tierno</u> the plaintiffs asserted—like here—that their employers misclassified entire classes of employees as exempt under a blanket policy such as used here.  (<u>Id</u>.)  Plaintiffs point out that in each of the cases, the courts found commonality based upon issues similar to those promoted by them.  (<i>See</i> <u>Greko</u>, 277 F.R.D. at 425 (finding commonality where "all assistant managers were classified as exempt"); <u>Alba</u>, 2007 WL 953849, at *6 (finding commonality based upon questions of law, namely, whether defendants' policies mischaracterized store managers as exempt and whether defendants' policies constituted a violation of Business and Professions Code section 172000; and <u>Tierno</u>, 2006 WL 2535056 at *2  (finding commonality where all Store Mangers classified as exempt and where

---

[4] Questions 3, 5 and 6 are vague and ambiguous.  However, for these questions to be amenable to common answers, they must rely upon the ASM job description or other job standards rather than how each ASM actually spent her/his time.  Thus, the Court construes these questions in this manner.

[5] The Court does not attribute any weight to <u>Fitts.</u>  In that case, the class was certified upon the parties' stipulation <i>for the purpose of settlement</i> and because it was decided in 2007, did not have the benefit of <u>Dukes</u>.

questions presented included whether all Store Managers were required to perform similar duties in a similar manner and whether the employer violated specified provisions of the Labor Code).

Defendants contend that Plaintiffs have not met the commonality threshold required by <u>Dukes</u>, 131 S. Ct. 2541 (2011), because of the numerous individualized issues Plaintiffs' misclassification claim raises.  (Doc. 110 at 26).  Defendants rely on the executive exemption analysis explained by <u>Marlo,</u> 639 F.3d at 948.  In doing so, Defendants assert that conflicting evidence about how proposed class members spent their time, how and when they exercised discretion in carrying out their duties, and their authority to hire or fire defeats commonality.   (Doc. 131 at 29-34).

<u>Marlo</u> found that the district court did not abuse its discretion in decertifying the class because plaintiff failed to establish "predominance" under Rule 23(b)(3).  639 F.3d at 948-949.  Notably, the Rule 23(a)(2) "commonality" factor relies upon a more lenient standard than the related requirement under Rule 23(b)(3). <u>Campbell v. PricewaterhouseCoopers, LLP</u> (E.D. Cal. 2008) 253 F.R.D. 586, 594-95 (citing <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019-20 (9th Cir.1998).  In <u>Dukes</u>, the plaintiffs could not set forth a common question or a uniform employment practice to explain the reasons for alleged discriminatory decisions. <u>Id</u>. at 2554. Wal-Mart's policy forbade sexual discrimination and plaintiffs' only proof that Wal-Mart "acted under a general policy of discrimination" was anecdotal statements and a sociologist's analysis of Wal-Mart's corporate culture. <u>Id</u>.

Here, Plaintiffs seek class certification based upon a corporate blanket exemption policy. Plaintiffs have sufficiently pled the common questions of law or fact set forth above, similar to ones raised in other misclassification cases. In doing so, they have alleged uniform employment practices (including the scheduling program, weekly business walks, the job descriptions, the implementation of merchandising strategies, interview protocols, etc.)  Accordingly, the Court finds that Plaintiffs have satisfied the commonality requirement. [6]

///

---

[6] Defendants' arguments regarding the need to analyze how the proposed class members actually spent work-time are more properly directed to the issue of "predominance."  Thus, the Court will consider Defendants arguments set forth in Docs. 131 at 29-24 in its Rule 23(b)(3) analysis.

3.   <u>Typicality</u>

The typicality requirement demands the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members.  <u>Hanlon</u>, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also* <u>Kayes v. Pac. Lumber Co.</u>, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Defendants argue that Plaintiff Casida's claims are not typical of the claims of the other proposed class members because Casida failed to meet Defendants' employment expectations.  (Doc. 110 at 39-41).  Defendants claim that Casida's claims are vulnerable to unique defenses that would not be available against other proposed class members who did meet Defendants' expectations.  (Doc. 110 at 39-41).  Courts have found that,

> Typicality may be found lacking "if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " <u>Hanon</u>, 976 F.2d at 508 (quoting <u>Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 903 F.2d 176, 180 (2d Cir.1990)); see also <u>J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.</u>, 628 F.2d 994, 999 (7th Cir.1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation").

<u>Pryor v. Aerotek Scientific</u>, LLC, 278 F.R.D. 516, 527 (C.D. Cal. 2011).  However, a mere unique defense alone, is not sufficient to find the element not satisfied.

> [T]he Ninth Circuit has made clear, the key question is whether a class representative is subject to a unique defense, such that she will be "preoccupied" and whether the defense will become the focus of the litigation to the detriment of the class. <u>Hanon</u>, 976 F.2d at 508. To be typical, a class member need not prove that she is immune from any possible defense, or that her claim will fail only if every other class member's claim also fails. Instead, she must establish that she is not subject to a defense that is not "typical of the defenses which may be raised against other members of the proposed class." <u>Id.</u>; see also <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 984–85 (9th Cir.2011).

1   Id. at 528.  Defendants make little attempt to demonstrate that the unique defenses to Casida's claims

2   would preoccupy her or that these defenses would become the focus of the litigation.  Likewise,

3   Defendants do not sufficiently tie their argument regarding Casida's substandard performance to any

4   of the common questions set forth above nor do they explain how this impacts the common answers

5   that would result from the common questions.  *See* Campbell, 253 F.R.D. 586, 595, fn.4.

6         Defendants contend also that the individualized nature of Plaintiffs' claims weighs against a

7   finding that the representative plaintiffs' claims are typical of the class.  (Doc. 110 at 39-41).

8   Defendants rely on the declarations of Plaintiff Galvan and other assistant managers to demonstrate

9   that proposed class members spent their time differently and exercised discretion differently.  (Doc.

10  110 at 39-41).  However, Defendants completely ignore that they do not dispute, for example, that

11  they employed a blanket exemption policy for assistant managers regardless of how they actually

12  spent their time and regardless of whether they were diligent or problematic employees.  Thus, their

13  argument, once again, seems to relate more to the predominance element, rather than whether

14  Plaintiffs' asserted injury is typical of the class of employees who were subject to the blanket

15  exemption policy.  Thus, Plaintiffs' contention that they were misclassified and therefore denied

16  overtime pay is typical of the class of assistant managers who Defendants allegedly misclassified.

17  (*See* Greko, 277 F.R.D. at 426).

18                4.     Fair and Adequate Representation

19        Absentee class members must be adequately represented for judgment to be binding upon

20  them.  Hansberry v. Lee, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the

21  "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

22  23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named

23  plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

24  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  In re Mego

25  Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000) (citing Hanlon, 150 F.3d at 1020).

26        Plaintiffs contend they have no conflicts with the putative class members concerning the issues

27  which are the subject of the litigation.  (Doc. 131 at 23-24).  Plaintiffs assert they have "expended

28  significant time and resources to the litigation by responding to document requests, searching for and

producing hundreds of documents, meeting with counsel and sitting for a deposition." In addition, Plaintiffs allege that they have retained competent counsel with experience in prosecuting complex employment class actions. (Doc. 131 at 24 (citing Doc. 126-34).

Based upon the declarations of Plaintiffs, Plaintiffs have demonstrated they are adequate representatives for the putative class members. Review of the declarations of counsel likewise demonstrates they are experienced wage and hour attorneys with class action experience. (Doc. 126-34). The Court therefore finds that Plaintiffs can fairly and adequately protect the interests of the proposed class. Defendants offer no argument to the contrary.

### C.      Rule 23(b) Requirements

Plaintiffs contend this class action meets the requirements of Rule 23(b)(3) because common questions predominate over individual questions in this action and, therefore, class treatment is superior to other available methods of litigation. (Doc. 131 at 24-28).

Federal Rule of Civil Procedure 23(b)(3) requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   These requirements are generally called the "predominance" and "superiority" requirements.  *See* Hanlon, 150 F.3d at 1022-23; *see also* Dukes, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

####            1.     Predominance

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a).  Amchem, 521 U.S. at 623-24.

> Rule 23(b)(3)'s predominance and superiority requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Amchem, 521 U.S. 591, 615, 117 S.Ct. 2231(1997) (quoting Fed.R.Civ.P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment)). Thus, the "'notion that the adjudication of common issues will help achieve judicial economy' " is an integral part of the predominance test.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir.2001) (quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.1996)). Whether judicial economy will be served in a particular case turns on close scrutiny of "*the relationship between the common and individual issues*."  Hanlon, 150 F.3d at 1022.

In re Wells Fargo Home Mortg. Overtime Pay Litigation (9th Cir. 2009) 571 F.3d 953, 958 (emphasis added).

       To show predominance, Plaintiffs must provide common proof of misclassification that would obviate the need for individualized inquiries.  Marlo I, 251 F.R.D. at 485.  Representative testimony alone is not sufficient.  Cruz v. Dollar Tree Stores, Inc. (N.D. Cal., July 8, 2011, 07-2050 SC) 2011 WL 2682967 (citing Marlo II, 639 F.3d 942, 949).  Defendants dispute that Plaintiffs have produced common proof of misclassification and contend that individual inquiries defeat class certification. (Doc. 110 at 35).

       Given that the parties have identified both common and individual issues, the Court analyzes the evidence supporting both issues and the relationship between the two below.

### a)  Common Issues

       Plaintiffs argue that Defendants' policy to classify all ASMs as exempt, is proof of a common issue.  (Doc. 131 at 16-18 and 25.)  However, Plaintiffs acknowledge that the Ninth Circuit has found that reliance on such uniform classification by an employer to the near exclusion of other factors is an abuse of discretion.  (Doc. 131 at 25); *see also* Wells Fargo Home, 571 F.3d 953, 958.  Thus, a showing of an issue susceptible to common proof alone, will not demonstrate that common issues predominate.

       Plaintiffs argue also that Defendants' "company-wide policies and practices" constitute evidence susceptible to common proof of misclassification.  (Doc. 131 at 25).  First, Plaintiffs cite to Plaintiffs' "uniform policy and practice of setting and restricting labor budgets to maintain minimum hourly staff" as common proof of misclassification.  (Doc. 131 at 25).  Plaintiffs argue this necessarily requires ASMs to work extended hours on non-exempt tasks (i.e. tasks that would be performed by non-exempt associates and leads had the program allowed for additional hours).  (Doc. 131 at 11-13 and 25-26). As common proof that ASMs were not authorized to extend associates'/leads' hours beyond those allotted by the scheduling program, Plaintiffs rely on the Associate Handbook (Doc. 126-21 at 3), an e-mail restricting the use of overtime (Doc. 126-23 at 2), and Defendants' expectations that stores will use 98% to 101% of budgeted labor amount (Doc. 126-6 at 11).

       Second, Plaintiffs cite to the ASM job descriptions, hiring protocols, and merchandising

standards established by Defendants as common proof of misclassification.  Plaintiffs note: 1) the ASM job description requires ASMs (SL, BC, and HI) to spend 95% of their time on the sales floor[7] (Doc. 126-16 at 2-7); 2) the hiring manual sets forth detailed instructions regarding how the initial interviews of prospective employees must be conducted, including questions that must be asked, where to sit in relation to the applicant, and scripted statements regarding the interview and the pay rate (Doc. 148 at 14-21); and, 3) the Store Planners specify how to set up the sales floor to implement Defendants' merchandising strategies (Doc. 146 at 36-47; Doc. 147).

### b)  Individual Issues

Both parties submit declarations from proposed class members regarding their individual experiences as ASMs, including the discretionary decisions they made or didn't make, and how each spent their time.  (Doc. 103 and 114).  Plaintiffs contend ASMs spent the majority of their time completing non-exempt tasks that their associates/leads could not complete and state that they did not have discretion in performing other duties such as setting up the floor, interviewing, disciplining, and scheduling employees for work. The declarations of ASMs provided by Defendants, assert the contrary.

In addition, Defendants supplied declarations from Store Managers (SMs) and District Managers who describe their expectations of their ASMs, what they observed about how their ASMs spent their time, and some of the strengths and weakness certain proposed class members exhibited during their employment.  (Doc. 114).  Plaintiffs argue that their work on the sales floor in assisting customers, and setting up the floor, as non-exempt based upon the lack of discretion vested in them to decide how to do this work.  For their part, Defendants describe similar work as part of their duty to

---

[7] The Court notes that on their face, none of these policies directly restrict AMSs discretion.  For example, spending 95% of their time on the sales floor does not mean, without more, that the ASM is engaged in non-exempt tasks. Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 801 (1995).  Notably, the position's title—Assistant Store *Manager*—implies that an important role of the ASM is to *manage* associates whose work occurs on the sales floor.  "The supervision of other employees is clearly a management duty . . . The fact that Burger King has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'" Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982) Moreover, standardization and centralized control over procedures "does not establish whether [supervisors] actually are 'primarily engaged' in exempt activities during the course of the workweek ... or whether they 'customarily and regularly exercise [ ] discretion and independent judgment." Marlo, 639 F.3d at 948.  Likewise, the hiring manual encourages the ASM is ask clarifying questions as needed.

train, supervise, and oversee their associates as they saw fit, based upon the discretion they were entitled to exercise.  (Doc. 103 and 114).

Although the Court does not weigh the evidence, it does "compar[e] the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification."  Marlo, 639 F.3d at 949.

### c)  Relationship between Common and Individual issues

"Common questions may predominate where the resolution of a question common to the class would significantly advance the litigation." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D.Cal.2006).   "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Id.

Here, the evidence shows that the tasks completed by ASMs are common to all ASMs.  Also, there is company-wide standardization in scheduling associates, interviewing potential employees, and implementation of Store Planners.

> Typically, the fact that a suit challenges policies common to the class weighs strongly in favor of a finding that the predominance requirement is met, since "an internal policy that treats all employees alike ... suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953, 957 (9th Cir.2009). In Wells Fargo, however, the Ninth Circuit concluded that "Wells Fargo's uniform exemption policy says little about the main concern in the predominance inquiry: the balance between individual and common issues." Id. at 959. It thus held that the district court had abused its discretion in relying on the policy to the near exclusion of other factors relevant in evaluating predominance. Id. This reflects the fact that were a common policy alone sufficient to establish predominance, the predominance requirement would merge with the commonality requirement.

Pryor, 278 F.R.D. at 532. Of key concern here is whether, despite the corporate standardization and the uniformity of tasks to be performed by the ASMs, evidence would be needed to prove misclassification of the class as to each prospective class member.  The Court finds that it would. Vinole, 571 F.3d at 947(misclassification claims and defenses requires a "fact-intensive, individual analysis of each employee's exempt status" where the centralized policies do not dictate how the employee's time is spent.)  For example, in Marlo, 639 F.3d at 948, the court held,

> [A] blanket exemption policy "'does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties.'" In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir.2009)

(citation omitted). Specifically, the existence of a policy classifying FTS as exempt from overtime-pay requirements does not necessarily establish that FTS were misclassified, because the policy may have accurately classified some employees and misclassified others.

Though the existence and capabilities of the scheduling programs is susceptible to common proof (Doc. 149 at 8-26; Doc. 125-6 at 11-28), alone this would not demonstrate that the ASMs were misclassified.  To do this, Plaintiffs would need to provide common proof of the lack of authority—by anyone in the local store--to extend hours beyond that allocated by the program and common proof that the additional hours worked by the ASM's due to this staffing shortage, were spent on non-exempt tasks. Though Plaintiffs have provided common proof that the ASMs did not have the authority to schedule associates for hours beyond that which the program dictated, the evidence is uncontradicted that Store Managers could do so.  Notably, the Associate Handbook, which requires "associates to obtain prior management approval before working overtime," does not speak to whether associates could not work more hours that the program allowed.  (Doc. 126-21 at 3).  On the other hand, aside from foundational and hearsay issues, the December 7, 2010 e-mail taken on its face, may be susceptible to common proof only that leads and associates were not supposed to be scheduled for more hours than allotted by the program, *unless the ASM provided sufficient justification*. (Doc. 126-23 at 2).  Again, it does not demonstrate that more hours could not be sought.  Coplan's expectation, that his stores use 98% to 101% of budgeted labor, is susceptible to common proof that the ASMs, generally, were supposed with work within the hours allotted by the scheduling program.  (Doc. 126-6 at 11).  However, even still, Plaintiffs provide scant evidence that this supports the conclusion that ASMs primarily spent their time on finishing the non-exempt tasks that should have been completed by associates.  (Doc. 131 at 10 and 12).  Rather, spending time doing non-exempt tasks may be explained by a number of factors including the varying capabilities and management competencies of the various ASMs, the differences in store size, location or amenities.  Indeed, Defendants directly counter Casida's declaration on this point by demonstrating that the ASM hired to replace her, Claudia Quinones (Doc. 113-7 at 36-56), *did not* work more than 50% of her time on non-exempt tasks despite that she worked in the same identical store, for the same identical Store Manager using the same identical staff.  In <u>Weigele</u>, the Court found common processes and training did not support a finding

of predominance because such policies did not instruct the Plaintiffs to perform non-exempt tasks:

> Defendant's common processes and training are not overwhelmingly supportive of a finding that common issues predominate. For example, the training materials provide instruction regarding the tasks a Dock Service Manager would perform. This guidance, however, does not appear to instruct the Plaintiffs to perform non-exempt tasks and would provide no help to the Court in determining the actual work mix performed by the Plaintiffs. The common processes are similar, speaking to the small details of particular tasks but not how managers were to balance their responsibilities. Nor has the Court been able to find anything in these documents which instructed the Plaintiffs to do a clearly non-exempt task, such as package handling. And to the extent Plaintiffs performed indirect work as a consequence of the strictures of Defendant's policies, that is an individual issue because it requires inquiry into situations inherently specific to the particular Dock Service Manager.

Weigele, 267 F.R.D. at 622. Thus, Plaintiffs' evidence is not sufficient to establish common proof that misclassification was the rule rather than the exception.

The court found similarly in Gales v. Winco Foods, 2011 WL 3794887 (N.D. Cal. Aug. 26, 2011). In Gales, the court was confronted with a factual scenario strikingly similar to the one here. Gales sought to certify a class made up of assistant managers. Id. at 1. Gales claimed that the AMs were misclassified by Winco under its blanket exemption policy. Id. Toward this end, he claimed that AMs spent more than 50% of their time ("the bulk of their day") on non-exempt tasks and were not paid for overtime. Id. Notably, there was a single job description for the entire class which demonstrated that physical labor was part of the job. Id. at 4-5. In addition, Winco exercised significant centralized control over how AMs performed their jobs. Id at 5-6.

> Further, Plaintiff presents some evidence of centralized control in WinCo stores. WinCo has a Space Management Department that creates store layouts and schematics. . . . The schematics allocate facing for some, but not all, products,[Footnote] meaning that they set out the exact number of those products to place on the shelves, as well as the precise placement of the shelves . . . WinCo also has a New Item Committee that meets monthly to determine what new items to bring into WinCo stores . . . It has a VP of Procurement, who negotiates the cost of products sold at Winco . . . And it has a VP of Merchandising and Retail Pricing, who negotiates deals regarding cost, promotions and new items with direct store delivery vendors, and decides what products go in a new store . . .

> Plaintiff points, too, to evidence that WinCo assigns target labor hours for each task performed by the hourly employees (that is, the employees supervised by the AMs) in WinCo stores, which are used to generate target hours "to see how well [a] store performed in a given department" each week . . . The time values apply uniformly to all WinCo stores . . . AMs are to manage their supervisees so that the store meets its target hours, and are trained on the target hours . . . AMs cannot set or change the number of labor hours allocated to their store . . .

25

And Plaintiff relies on the declarations of eleven putative class members, which describe the job of AM in similar terms and as one involving hands-on work.[Footnote] . . .

Finally, Plaintiff cites WinCo's uniform classification of AMs as exempt—the policy decision central to this case—as evidence that WinCo thinks that the job of an AM is uniform.

Id., internal citations and footnotes omitted.  Nevertheless, the Court held, "Despite all of that evidence, Plaintiff's case for certification fails for two reasons. First, there is significant evidence of variation in AMs' jobs. Second, although Plaintiff's evidence illustrates with some detail what WinCo stores are like, and, to a lesser extent, what kinds of things AMs do, it does not answer the central question in this case: whether AMs spend the majority of their time performing exempt duties." Id. at 6.

Again in Akaosugi v. Benihana Nat. Corp., 2012 WL 1094425 at *9-11 (N.D. Cal. Mar. 30, 2012), the court rejected that class issues predominated despite "common policies, such as a systematic policy of hiring too few hourly people, forcing managers to fill in for hourly employees because of a shortage of manpower  . . . defendant's policies for labor budgeting" and centralized corporate policies requiring managers spend a specific amount of time with customers and in the dining room.  The court rejected as insufficient plaintiffs' declarations that concluded that they spent more than 60% of their time on non-exempt tasks because—as here--they failed to detail "with specificity how much time was spent performing managerial tasks directed at customers or how much time was spent performing non-exempt work or how the managers calculated the percentages of their time spent on each. Moreover, the declarants appear to presume all work done in the dining room is non-exempt work, but managers direct hosts, resolve customer complaints, process voids, and perform other managerial tasks while in the dining room."  Id. at 9.

The court held, "It is true that a company-wide policy can answer the need for class-wide method of proof **where the policy affects all class members in the same way and the policy itself is the point in controversy**, but here the policies are not unlawful in themselves and would be merely contributing factors. In no instance could these contributing factors alone prove up any class members' overtime case. Individualized proof would still be important. Common background facts are not enough to supply a common method of proof." Akaosugi, 2012 WL 1094425 at *9, emphasis added.

Finally, Plaintiffs rely heavily on <u>Greko</u>, <u>Alba</u> and <u>Tierno</u>. Despite some facial similarities between these cases and the current factual situation, the Court is not persuaded by these authorities. In <u>Greko</u>, there was a dispute as to whether the particular tasks the job description required were exempt or non-exempt. <u>Greko</u>, 277 F.R.D. at 427-428. Here, however, there is no similar dispute. Plaintiffs' counsel admitted at the hearing, that there is no dispute that the "core tasks" required of ASMs and which have been classified by Sears' expert as exempt are, indeed, exempt. Instead, the dispute centers on whether the centralized corporate program removed discretion from the ASMs such that when they performed these tasks, the tasks are rendered non-exempt.

In evaluating the conflicting evidence regarding these tasks, it appears that some ASMs—notably those submitting declarations in support of Plaintiffs' motion—*were* subject to policies that removed a significant amount of discretion—if not all discretion—from them. On the other hand, this is markedly different from the experience outlined in the numerous declarations submitted by Defendants. (Docs. 113-1, -2, -4, -5, -6, -7, -8, -9) These declarations deny the centralized policies constrained their discretion. (See e.g., Doc. 113-8 at 22 ["'All-in-One Staffing Report' . . . gives us general guidance . . . but I do deviate from these guidelines." . . . "I have authority to discipline and terminate associates."]; Doc. 113-8 at 35 "[W]hile meeting forecasted payroll hours is a goal, I have never experienced any negative consequences as a result of my departments going over their forecasted payroll hours."]; Doc. 113-8 at 37 [" . . . I am responsible for hiring in my department . . . I rely on a lead associate to do an initial interview and screening."]; Doc. 113-8 at 48 [" . . . I have authority to hire associates . . ."]; Doc. 113-8 at 48-49 ["When I feel that I need to schedule additional hours to complete the work in my departments, I simply add the extra payroll hours and then let my Store Manager know."]; Doc. 113-8 at 52 [As to the store's merchandising, "I am free to deviate from the Company's general guidance to achieve this goal."]; Doc. 113-9 at 6 ["I deviate from Sears' general floor plans in the women's apparel department."]; Doc. 113-9 at 7 ["I do not need permission to discipline my associates."]; Doc. 113-9 at 59 ["I receive general guidance about how to set up the departments from the Company . . . I can and do revise floor plans based on my own judgment."]; Doc. 113-9 at 61 ["Although Sears uses a program for scheduling, I often need to alter what the system populates and manually add hours as needed for certain tasks and make adjustments."]; Doc.

113-9 at 62 [deviates from script when interviewing prospective employees.]  In any event, the Court

notes that the <u>Greko</u> court failed to mention, let alone distinguish, <u>Marlo v. United Parcel Service, Inc.</u>

639 F.3d 942 (9th Cir. 2011), which was decided six months before. Marlo explained,

> To the extent Marlo argues that UPS's policies and procedures establish sufficient evidence of predominance, his argument still fails. Marlo asserts that the district court had before it various documents explaining activities that FTS are expected to perform, and procedures that FTS should follow in issuing staffing assignments and training hourly employees. Even assuming that those documents establish that UPS's policies and procedures apply to all FTS, however, Marlo has not explained how they establish predominance as to these particular exemptions. In particular, the fact that UPS expects FTS to follow certain procedures or perform certain tasks does not establish whether they actually are "primarily engaged" in exempt activities during the course of the workweek

<u>Id.</u> at 948.

Likewise <u>Alba</u>, decided in 2007, is of little assistance here.  In <u>Alba</u>, the store managers were

subject to centralized authority and policies that told them not only which tasks they must complete on

a daily basis but also how they would complete the task and how much time they would spend on each

task.  2007 WL 953849, at *12.  Moreover, the managers were required to work in the store alone for

"several hours during an operational day." (<u>Id.</u> at 2) By necessity, this policy required the manager to

perform non-exempt work for hours every day.  Thus, the court held that individual questions did not

predominate.  <u>Id.</u> at 13. Indeed, the court found that the only individual question was the amount of

damages to which each manager was entitled and no individual questions related to liability.  <u>Id.</u>

Finally, <u>Tierno</u> is distinguishable.  In <u>Tierno</u>, 2006 WL 2535056 at *5, there was undisputed

evidence of a

> . . . great deal of centralized control over its stores (consistent with a chain store model) with respect to just about every aspect of store operations-from store appearance, layout, merchandising, pricing, staffing, budgeting, and personnel policies to the music played and the temperature at each store. As Rite Aid's Director of Human Resources and Labor Relations for the West Coast, Brad Sapp, explains, "Rite Aid has adopted a number of processes ... [that] cover such matters as merchandising (including displays and pricing), customer service, store appearance and maintenance, financials, and human resource policies and procedures ... [and] **Rite Aid strives that these processes be followed in every store**."

Emphasis added.  In addition, though there was some slight variation in the "scope and scale" of the

tasks completed by the store managers, each performed the same tasks at each store.  <u>Id.</u> at 6.  This

was supported by evidence from "Rite Aid's senior level managers [who] have discounted the

1    suggestion that the Store Manager position varies in any substantial way depending on store size,

2    location or variance in product lines." Id. at 8. Moreover, the court relied heavily on the fact that Rite

3    Aid had a blanket policy of making store managers exempt which, of course, now is only one factor

4    for the Court to consider. Wells Fargo Home, 571 F.3d at 958.

5            The policies are issue here do not tell the Court with any specificity how AMs actually spend

6    their time. Indeed, Defendants counter with evidence that the amount of time spent on non-exempt

7    tasks by ASMs, varies widely. (See, e.g., Doc. 113-1 at 8 ["There is no way that my ASMs spend

8    more than half of their time on these types of tasks that are performed by hourly associates."]; Doc.

9    113-2 at 4 ["I spend no more than 15 percent of my time assisting with tasks performed by my

10   associates . . ."]; Doc. 113-2 at 15 ["I do not agree that ASMs spend a majority of their time

11   performing hands-on tasks"]; Doc. 113-2 at 21 ["How I spend my time varies greatly depending on the

12   shift and what tasks need to be done in my departments on a given day."]; Doc. 113-4 at 10 ["Each

13   ASM at my store works differently, and ASMs in different stores work differently"].)

14           Though, the common policies provided by Plaintiffs here instruct them in how to perform

15   certain tasks, they do not tell Plaintiffs how to balance their responsibilities and do not direct them to

16   perform the tasks reserved for their associates and leads. Weigele, 267 F.R.D. at 622. Just as in

17   Akaosugi, the legality of these policies is not at issue and the evidence presented by both sides

18   demonstrates that the way the policies were applied to ASMs, varied. Thus, though there may be

19   common sources of proof related to which tasks performed by ASMs are non-exempt, whether ASMs

20   spend more time performing these non-exempt tasks must be proven on an ASM-by-ASM basis. See

21   Ramirez, 20 Cal.4th 785, 802 ("courts should consider, first and foremost, how the employee actually

22   spends his or her time" before considering the employer's realistic expectations, any expressions of

23   employer displeasure, and whether such expressions were realistic). For these reasons, the Court finds

24   that individual issues predominate.

25                       2. Superiority

26           The superiority inquiry requires a determination of "whether objectives of the particular class

27   action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted).

28   This tests whether "class litigation of common issues will reduce litigation costs and promote greater

                                                      29

efficiency." <u>Valentino v. Carter-Wallace, Inc.,</u> 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.  Here, the putative class members are educated professionals[8] with salaries and alleged damages sufficient enough to have an interest in individually pursuing or controlling their own cases.

On the other hand, Plaintiffs argue that even if individual questions predominate, the Court should certify common issues and under Fed. R. Civ. P. 23(c)(4)(A) and apply class treatment to them.  Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues" only, if appropriate. Fed.R.Civ.P. 23(c)(4). Thus "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." <u>Valentino</u>, 97 F.3d at 1234. Thus, the question of whether partial certification is appropriate under Rule 23(c)(4)(A) is closely linked to the question of whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); see also <u>In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.,</u> 693 F.2d at 856 (treating Rule 23(c)(4)(A) as part of the superiority inquiry). The focus is on "judicial economy." <u>Valentino</u>, 97 F.3d at 1234.

Plaintiff spends little effort on this topic and argues only that the common issues include all of the common questions outlined above.  However, clearly, these "common issues," for the most part would require individual evidence.  Whether Sears properly classified its ASMs as exempt would require a determination as to each ASM whether he/she spent more than 50% of the work time on non-exempt tasks, for example.  Even the question of whether the tasks required by the job description were non-exempt due to Defendants' centralized standardization, would require individualized evidence because it appears that the amount of discretion an ASM has varies from store-to-store.  On

---

[8] The job description requires a college degree or equivalent experience.  Doc. 126-16 at 2.

the other hand, only questions number 2[9] and 5 seem amenable to class-wide common proof. However, there is no showing that even if these questions are answered in the affirmative, that this impacts whether Defendants wrongfully failed to pay overtime wages.

Individualized questions are essential to liability here because whether the exempt classification was properly imposed depends on the duties actually performed by each ASM, how they were performed and how much time was spent on the task. At oral argument, Plaintiffs' counsel agreed that at its core, this litigation questions whether Defendants' centralized programs removed discretion from the ASMs such that when performing indisputably managerial-type tasks this work was, nevertheless, non-exempt.  However, the evidence on this topic varies widely.  Defendants present numerous declarations from ASMs which indicate that the corporate programs did not remove discretion in performing these tasks.  Most notably, Plaintiffs fail to address the declaration of Claudia Quinones, the ASM hired to replace her, who describes a strikingly different employment experience despite that they worked in the same store, for the same manager with the same employees and under the same centralized policies.  (Doc. 113-7 at 36-56).  Moreover, the evidence shows that whether a task is exempt may depend on many factors such as the amount of discretion vested in the ASM actually permitted in performing the task and whether the ASM performed the task along with hourly associates for training purposes. Given the numerous individualized inquiries, the Court finds that a class action would be impractical and unmanageable and would not promote judicial economy.  Thus, the Court concludes that proceeding as a class is not the superior method.

## VII.    FINDINGS AND RECOMMENDATIONS

As set forth above, Plaintiffs have failed to demonstrate the requirements for certification under Rule 23(b)(3).  Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' motion for class certification be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

---

[9] Question 2 reads, "Did Sears' settlement of repeated lawsuits over this issue trigger an obligation to affirmatively or individually analyze the exemption status of Assistant Managers?" and question 5 reads, "Does Sears maintain a uniform policy and practice of setting and restricting labor budgets for hourly staff?"

Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the Court.   A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Any reply to the Objections shall be filed and served within fourteen days of the date of service of the objections.

IT IS SO ORDERED.

Dated:   **August 8, 2012**                           **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

9j7khjjed